IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| S. MOBLEY EL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:26-cv-371-ECM |
| | )      [WO] |
| EXETER FINANCE LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

This case concerns the Plaintiff's "possession and use of [a] . . . 2019 Mazda CX-9." (Doc. 5 at 7).[1]  On May 12, 2026, the Plaintiff, proceeding *pro se*, filed suit against four defendants—Exeter Finance LLC ("Exeter Finance"), Carmax Auto Superstores, Inc. ("Carmax"), Safe-Guard Products International, LLC ("Safe-Guard"), and CNA National Warranty Corporation ("CNA")—to prevent "repossession-related activity, adverse servicing activity, or other enforcement conduct affecting [the] Plaintiff's interests." (Doc. 1 at 1, 4).  The Plaintiff failed to explicitly state any causes of action or sufficiently allege subject matter jurisdiction. (*See generally id.*).  Accordingly, the Court ordered the Plaintiff to show cause "why this case should not be dismissed for lack of subject matter jurisdiction." (Doc. 3 at 2).

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

The Plaintiff responded by filing a composite document which purports to contain five discrete documents:  (1) verified response to order to show cause; (2) verified amended complaint; (3) notice of controlling definitions; (4) verified accounting demand; and (5) emergency request for preservation of status. (*See* doc. 5 at 1).  For the reasons stated below, the amended complaint (the "operative complaint")[2] is an impermissible shotgun pleading and is therefore due to be stricken with leave to refile.

## II.  LEGAL STANDARDS

### A.    Shotgun Pleadings

A complaint must be pleaded in compliance with Federal Rules of Civil Procedure 8(a)(2) and 10(b), as well as the Eleventh Circuit's instructions on proper pleading of a complaint.  Rule 8(a)(2) requires a complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . .  If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  The purpose of these rules is to allow opposing parties to "discern what [the plaintiff] is claiming and frame a responsive pleading" and to allow the Court to "determine which facts support which claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citation omitted).  "Complaints that violate either Rule 8(a)(2) or Rule 10(b) . . . are often disparagingly referred to as 'shotgun pleadings.'" *Id.*

---

[2] Because it is unclear exactly which parts of the composite filing comprise the operative complaint, the Court refers to the entire filing as the operative complaint. (*See* doc. 5).

The Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." *Id.* at 1321; *accord Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321. The second type is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third type fails to "separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. The fourth and final type of shotgun pleading "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

"A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quoting *Weiland*, 792 F.3d at 1320). The Eleventh Circuit instructs "district court[s] that receive[] a shotgun pleading [to] strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).

**B.      Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction" and only possess "that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (emphasis in original). "[I]n a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

**C.      *Pro Se* Pleadings**

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (emphasis in original) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)). Although the Court must construe a *pro se* complaint liberally, the Court cannot "serve as *de facto* counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (emphasis in original) (citation omitted). "The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam)).

4

## III. DISCUSSION

### A.    Shotgun Pleading

The Plaintiff's operative complaint—far from a model of clarity—does not provide a short and plain statement of her claim. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam); FED. R. CIV. P. 8(a)(2). Indeed, it is difficult to even identify where the operative complaint begins and ends in her composite filing. (*See* doc. 5 at 1–11). That is so for several reasons. For one, the Plaintiff uses several headings in her composite filing: (1) "response to order to show cause"; (2) "subject matter jurisdiction"; (3) "controlling definitions"; (4) "factual allegations"; (5) "claim for declaratory relief"; (6) "claim for verified accounting"; (7) "claim for preservation of status"; and (8) "emergency request for temporary restraining order."[3] (Doc. 5 at 1–10). Three pages

---

[3] To the extent the Plaintiff seeks a temporary restraining order, her request is due to be denied. A temporary restraining order may issue only where the moving party demonstrates that (1) there is a substantial likelihood of success on the merits, (2) the temporary restraining order is necessary to prevent irreparable injury, (3) the threatened injury outweighs the harm the temporary restraining order would cause to the nonmoving parties, and (4) the temporary restraining order would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001) (per curiam). Additionally, pursuant to Federal Rule of Civil Procedure 65, a temporary restraining order may issue without notice to the nonmoving parties only if (1) specific facts in an affidavit or verified complaint show that the moving party will suffer immediate and irreparable injury before the nonmoving parties can be heard and (2) the moving party certifies in writing the efforts she has made to notify the nonmoving parties and the reasons notice should not be required. FED. R. CIV. P. 65(b)(1). The Plaintiff has not shown that she faces immediate and irreparable injury before the nonmoving parties can be heard because a vehicle's threatened repossession does not constitute irreparable harm. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *Spicer v. OneMain Fin. Grp., LLC*, 2026 WL 776130, at *2 (M.D. Fla. Mar. 19, 2026) ("[R]epossession of a vehicle is at most an inconvenience. [Plaintiff] could utilize public transportation and private ride share services, and any harm caused by wrongful repossession would be compensable through money damages."); *Horowitz v. Mercedes-Benz Fin. Servs. USA LLC*, 2022 WL 344632, at *1 (M.D. Fla. Feb. 4, 2022) ("[T]he threatened repossession does not rise to the level of irreparable harm necessary for the issuance of a temporary restraining order as any harm caused by repossession would be compensable through money damages."). The Plaintiff's motion for a temporary restraining order—to the extent she seeks one—is due to be denied on that basis alone.

of the composite document are devoted to explaining the "controlling definitions" that govern the document's text (many of which do not seem to appear at all outside of this section). (*See id.* at 4–7).

Even liberally construing the Plaintiff's operative complaint, it suffers from two deficiencies:   (1) it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" and (2) it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322–23.  The Court addresses each in turn.

### 1.    Multiple Claims Against Multiple Defendants

As stated above, the Plaintiff originally sued four defendants:   Exeter Finance, Carmax, Safe-Guard, and CNA. (Doc. 1 at 1).  But, in her recent filing, the Plaintiff captions the document as against "Exeter Finance . . . et al., Defendants." (Doc. 5 at 1). Although the operative complaint references multiple defendants, the Plaintiff does not name or discuss Carmax, Safe-Guard, or CNA. (*See generally id.*).  Instead, the Plaintiff references "Defendants" generally and asks the Court to require the "Defendants to produce" various documents including "credit-reporting records" and the Plaintiff's "complete payment history." (*Id.* at 9).  Defendant Exeter Finance is the only Defendant mentioned by name. (*See, e.g., id.* at 8 ("Exeter [Finance] identified the Opelika, Alabama address associated with [the] Plaintiff."); *see also id.* at 13)).  Accordingly, because an amended complaint supersedes the original, the only defendant properly before the Court is Exeter Finance. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215

(11th Cir. 2006) ("An amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" (quoting *Proctor & Gamble Def. Corp. v. Bean*, 146 F.2d 598, 601 n.7 (5th Cir. 1945))).[4]

None of the Plaintiff's causes of action specify which of the Defendants "are responsible for which acts or omissions, or which of the [D]efendants the claim is brought against." *Weiland*, 792 F.3d at 1323.  This is further complicated because the Plaintiff's operative complaint does not "name all the parties" or "state its claims . . . in numbered paragraphs." FED. R. CIV. P. 10(a) & (b).  Thus, the operative complaint is a shotgun pleading because it "fail[s] to give any defendant fair notice of the allegations against it." *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020).  If the Plaintiff intends to maintain an action against the four defendants she originally sued, she must ensure that her second amended complaint gives each defendant fair notice of the allegations against it. *See, e.g.*, *Williams v. Possible Fin. Inc.*, 2026 WL 688254, at *1 (M.D. Fla. Mar. 11, 2026)[5] ("Each defendant must be able to read the second amended complaint and clearly understand the claims against it and the factual grounds upon which each claim rests.").  If the Plaintiff does name multiple defendants in the second amended complaint, she is expressly forewarned that failure to clearly specify what conduct she is accusing which defendant of will result in another

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions before October 1, 1981.

[5] The Court here, and elsewhere in this Opinion, cites to nonbinding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

dismissal on shotgun pleading grounds. *See Magluta*, 256 F.3d at 1284 (styling a complaint "a quintessential 'shotgun' pleading" that was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities ma[d]e [it] plain that all of the defendants could not have participated in every act complained of.").

### 2.    Conclusory Factual Allegations

The Plaintiff's factual allegations are barebones—she contends that she possesses a 2019 Mazda CX-9 that is involved in a bankruptcy proceeding, that Exeter Finance "issued a payoff quote dated November 24, 2025," regarding that vehicle, and that the "payoff amount" totals "$27,925.67 with daily interest accrual of[] $15.55 per day." (Doc. 5 at 7–8).  The operative complaint does not allege that the Plaintiff entered into an agreement with Defendant Exeter Finance or how the relationship between the (putative) parties lays the groundwork for the Plaintiff's three "causes of action." (*See id.* at 9–10); *see also Barmapov*, 986 F.3d at 1326 ("The complaint neither quotes nor provides any specific details about the operating agreement for the purported joint venture between Barmapov and the[] defendants. . . .  If Barmapov himself cannot offer a coherent explanation for how the joint venture was structured, we cannot expect the defendants to do it for him by digging through 50 pages and 249 numbered paragraphs of scattershot factual allegations.").

The Court—and any defendants—are left to guess which factual allegations are related to the Plaintiff's claims for declaratory relief, a verified accounting, and preservation of status. (Doc. 5 at 9–10).  Even the operative complaint's barebones allegations are not obviously connected to any particular cause of action. *See Weiland*, 792

F.3d at 1322.  The Plaintiff's conclusory allegations fail "to give the defendants adequate notice of the claims against them." *Id.* at 1323.  Accordingly, the Plaintiff's operative complaint is due to be stricken as an impermissible shotgun pleading.

**B.     Subject Matter Jurisdiction**

Besides its procedural infirmities, the operative complaint also fails to clearly articulate a basis for the Court's exercise of subject matter jurisdiction over the Plaintiff's claims.  The Plaintiff's operative complaint cites four different reasons the Court retains subject matter jurisdiction over her claims:  (1) bankruptcy-related jurisdiction; (2) federal question jurisdiction; (3) the Fair Credit Reporting Act; and (4) declaratory relief jurisdiction. (Doc. 5 at 2–3).  Although the Plaintiff lists various grounds in support of subject matter jurisdiction, the purported reasons for subject matter jurisdiction fail to track her factual allegations.  The Plaintiff is advised that the Court may dismiss a claim for lack of subject matter jurisdiction "if (1) the claim is 'immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) the 'claim is wholly insubstantial and frivolous.'" *Gilberti v. Adrurra Grp., Inc.*, 810 F. App'x 806, 808 (11th Cir. 2020) (per curiam) (quoting *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998)).  Because the Court finds that the operative complaint is an impermissible shotgun pleading and due to be stricken, the Court will permit the Plaintiff to file a second amended complaint.  "Any amendment by [the] Plaintiff must cure [her] shotgun pleading and demonstrate a basis for subject matter jurisdiction." *Cavaliere v. Comcast Cable Commc'ns, LLC*, 2022 WL 824246, at *5 (M.D. Fla. Mar. 18, 2022).

### IV.  CONCLUSION

The operative complaint is a shotgun pleading, at bottom, because it falls far short of giving the defendants—whoever they are—"adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.  Because it is the policy of the federal courts to decide cases on their merits rather than dismiss them on procedural grounds, the Plaintiff will be given an opportunity to amend her complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").  But the Plaintiff is expressly warned that repeated failures to properly plead her claims may result in dismissal with prejudice. *See id.* (stating that leave to amend need not be given in the face of "repeated failure to cure deficiencies by amendments previously allowed").

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

1.  To the extent the Plaintiff's operative complaint included a motion for temporary restraining order (doc. 5), that motion is DENIED.

2.  The Plaintiff's operative complaint (doc. 5) is STRICKEN as an impermissible shotgun pleading.

3.  **On or before July 31, 2026,** the Plaintiff shall file a second amended complaint that complies with Federal Rules of Civil Procedure 8 and 10 and with this Order, including the following directives:

a.  The second amended complaint must demonstrate a basis for subject matter jurisdiction.

b.  The title of the second amended complaint must name all the parties to the suit. *See* FED. R. CIV. P. 10(a).

c.  The second amended complaint must state its claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b).

d.  The second amended complaint must specifically set forth its causes of action in discrete, sequential, numbered counts.

e.  If appropriate, the second amended complaint must specify "which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323.

f.  The second amended complaint shall be filed as a separate document.

g.  The second amended complaint shall not be filed as a composite document that includes multiple legal filings.

4.  The Plaintiff is encouraged to consult the Court's website for guidance on proceeding pro se and to avail herself of the resources identified there. *Representing Yourself in Court*, (https://www.almd.uscourts.gov/representing-yourself).

5.  The Clerk of the Court is DIRECTED to mail a copy of this Order to the Plaintiff.

DONE this 13th day of July, 2026.

       /s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE